NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
NATIONAL ENTERPRISES, INC.,         :
                                    :
          Plaintiff,              :   Civil Action No. 11-4756 (JAP)
                                    :
   v.                               :
                                    :
                                    :   **OPINION**
WONG & FLEMING, et al.,             :
                                    :
          Defendants.             :
_____ :

PISANO, District Judge.

    Presently before the Court is Defendants Wong Fleming, P.C., Daniel Fleming, and Linda Wong's (collectively, "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff National Enterprises, Inc. ("Plaintiff" or "NEI") opposes the motion. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

**I.    BACKGROUND**

    This action emanates from a judgment that was entered against Kenneth Wurtenberger in Florida after he obtained and defaulted on a loan to NEI's predecessor. On or about April 6, 2010, that judgment was transferred from Florida to New Jersey, and NEI subsequently applied for a wage attachment and garnishment. Compl. ¶¶ 5-6. On November 8, 2010, an Order was entered by Judge Douglas H. Hurd of the Superior Court of New Jersey, Law Division, Mercer County finding that Adorno & Yoss LLP, a Florida limited liability partnership at which Wurtenberger was a principal, was subject to the laws of New Jersey, including personal jurisdiction, and was obligated to withhold all of Wurtenberger's wages in accordance with New

Jersey's wage garnishment laws.  Saldutti Decl., Ex. N.  In a subsequent Order filed on April 26, 2011, and entered *nunc pro tunc* as of March 9, 2011, Judge Hurd entered judgment against Yoss LLP, the successor to Adorno & Yoss, in the amount of $453,941.54 ("Yoss Judgment").[1]  Saldutti Decl., Ex. G.  After learning that Yoss LLP would be dissolving, NEI brought this action to recover the Yoss Judgment from Defendants.

On May 13, 2010, Defendant Wong Fleming, P.C.[2] ("Wong Fleming"), a minority-owned law firm organized under the laws of New Jersey, announced that it was establishing a relationship with Adorno & Yoss, then the largest certified minority-owned law firm in the United States.  Saldutti Decl., Ex A.  The announcement described the new relationship between the two firms as a "merger," and stated that "[m]erging with Wong Fleming" was consistent with Adorno & Yoss's strategy of "looking to grow from mutually beneficial arrangements" with firms across the country.  *Id.*

By way of an Affiliation Agreement entered into by the parties, Wong Fleming and Adorno & Yoss became named Adorno Yoss Wong & Fleming.[3]  Wong Decl., Ex. A (hereinafter, "Agreement" or "Affiliation Agreement").  The stated purpose of the Agreement was "to accommodate client demands, expand the areas of legal services, expertise, and geographic coverage available to their present and future clients, and to be available for consultation, advice and guidance for matters on behalf of those clients."  Agreement, ¶ D.  The Agreement provided that it:

> "is solely an affiliation agreement and is solely intended for the purpose of (i) exchanging an equity interest between the parties; (ii) establishing a continuing relationship between the parties pursuant to which they share work

---

[1] The Court notes that it is entirely unclear how or why the judgment previously entered against Wurtenberger became the obligation of Yoss LLP.  The parties do not explain or clarify this development in their papers.
[2] Wong Fleming, P.C. is improperly pled as "Wong & Fleming."
[3] Specifically, the Agreement was entered into between Wong Fleming, P.C. and Adorno & Yoss Holdings LLP, a Florida limited liability partnership.  Agreement, ¶ A.

2

>between each other based on client needs and client requirements; and (iii) to signify that the firms are available to each other for consultation and advice to the Client and firm on a regular and continuing basis for matters within each party's respective jurisdictions or areas of expertise.  Under no circumstances shall this Agreement be deemed to create a general partnership between A&Y and W&F.  This Agreement is not intended, and shall not be construed to, confer any rights upon any shareholder, creditor, partner or joint venturer of W&F or A&Y (except to the extent any such persons or entitles may be indemnified hereunder), or any other person or entity, whether as third party beneficiaries or otherwise, against any party hereto or their respective directors, officers, agents, employees, representatives, affiliates or controlling persons.  W&F and A&Y acknowledge that they are entering into this Agreement on an arm's-length basis, and this Agreement is not intended to create, and shall not create, a joint venture, nor shall the parties hereto be partners or joint venturers." *Id.* ¶ 21.

Pursuant to the Agreement, each party was responsible solely for its own debts and taxes, and neither party was provided "the right, power or authority to bind the other party to any debt or other obligation other than as specifically enumerated" in the Agreement. *Id.* ¶¶ 10-11. Additionally, the Agreement provided for the conveyance of one share of Wong Fleming's common stock, no par value to Adorno & Yoss for ten dollars, and one unit of Adorno & Yoss to Wong Fleming for ten dollars. *Id.* ¶ 5.  Both firms retained the option to repurchase their interest upon written notice at any time or after the termination date as set forth in the Agreement. *Id.*

Based upon the terms of the Agreement and her understanding of the relationship it created between Wong Fleming and Adorno & Yoss, Linda Wong ("Wong"), a principal at Wong Fleming's Princeton headquarters, testified that no legal merger occurred between the two firms.  Wong Dep. 13:8-10.  Instead, she stated that the firms remained "separate entities for tax purposes, for all of our profit and loss, but [Wong Fleming] would adopt the Adorno & Yoss name as part of [its] name and do business as a sister office." *Id.* 12:19-13:2.  Thus, she testified, Wong Fleming was "a completely separate entity from the Adorno and Yoss law firm" and used its name only "for marketing purposes." *Id.* 15:12-22.  Additionally, she affirmed that the

3

conveyance of one share or unit from each firm called for in the Affiliation Agreement never actually occurred, and that no assets were ever exchanged between the firms. Wong Decl. ¶¶ 16-17.

Following the departure of Hank Adorno from the firm, Adorno & Yoss LLP was renamed Yoss LLP on November 2, 2010. *Id.* ¶ 9. Correspondingly, the name provided for in the Affiliation Agreement was changed to Yoss Wong Fleming. Wong Decl. ¶ 9. According to Wong, because Adorno's departure from the firm resulted in it no longer being able to be considered minority-owned, the appeal of the affiliation from Wong Fleming's prospective was eviscerated. Wong Decl. ¶¶ 11-12. As a result, after it was determined that Adorno was not going to be returning to the firm, Wong Fleming terminated its Affiliation Agreement with Yoss LLP on March 7, 2011 by consent of the parties. *Id.* ¶¶ 13-14; Saldutti Decl., Ex. P.

At the time of its announcement that it would be disassociating from Yoss LLP, Wong declares that Wong Fleming had no knowledge of the impending judgment by NEI against Yoss LLP. Wong Decl. ¶ 15. She further states that Wong Fleming did not participate in the underlying litigation involving that judgment, and that NEI was informed that Wong Fleming would not accept any demands in connection therewith in light of the separate nature of Wong Fleming and Adorno & Yoss and because Wurtenberger was not part of the payroll at Wong Fleming's Princeton office. *Id.* ¶¶ 4-5. As a result, Adorno & Yoss, and later Yoss LLP, handled all of the litigation in the Superior Court of New Jersey out of the firm's Coral Gables, Florida office. *Id.* ¶ 6.

On July 18, 2011, after Yoss LLP dissolved, NEI filed a Six Count complaint against Wong Fleming, Linda Wong, Daniel Fleming, and numerous unnamed individual attorneys. Counts One and Two seek a declaration that Wong Fleming is the successor in interest to Yoss

LLP and is therefore responsible for satisfying the judgment entered against it on March 9, 2011. Counts Three and Four assert claims for legal and equitable fraud and negligent misrepresentation on the basis of alleged statements made in a letter from Yoss LLP's counsel to NEI's counsel. Counts Five and Six allege claims for fraudulent concealment and fraudulent transfer in connection with the timing and circumstances surrounding Wong Fleming's disassociation from Yoss LLP, and Count Seven requests that the Court pierce the corporate veil to hold Linda Wong and Daniel Fleming personally liable. On September 14, 2011, Defendants filed the instant motion for summary judgment.

## II.     STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir. 1997). The Court is not to "weigh the evidence and determine the truth of the matter," but instead need only determine whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249.

The moving party bears the initial burden of demonstrating the absence of a genuine issue, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once that showing has been made, the burden then shifts to the non-moving party to identify, by affidavits

or otherwise, specific facts showing the existence of a genuine issue for trial. *Id.* at 324. The non-moving party may not rest upon the mere allegations or denials of its pleadings, *id.*, and must offer admissible evidence establishing a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matushita*, 475 U.S. at 586.

### III. DISCUSSION

#### A. Counts One and Two: Successor Liability

In Counts One and Two, NEI seeks to hold Wong Fleming liable for the Yoss Judgment. Specifically, NEI requests a declaration that Wong Fleming is the successor in interest to Yoss LLP, and alleges that the timing of Wong Fleming's termination of the Affiliation Agreement, Wong's failure to comply with its demands in connection with the underlying state court litigation, and "the transfer of assets" from Yoss LLP to Wong Fleming were all "for the fraudulent purpose of escaping liability for the" Yoss Judgment. Compl. ¶¶ 23-26.

Traditionally, New Jersey law provides that "where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor." *Ramirez v. Amsted Indus., Inc.,* 86 N.J. 332, 340 (1981) (citations omitted); *Portfolio Fin. Servicing Co. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 624-25 (D.N.J. 2004). However, four exceptions have been recognized that warrant the imposition of successor liability: "where (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities." *Ramirez*, 86 N.J. at 340-41.

Here, as a threshold matter, NEI's successor liability claims fail because it has not provided any evidence that Yoss LLP ever actually sold or otherwise transferred any assets to Wong Fleming.  *See Ramirez*, 86 N.J. at 340.  Indeed, although NEI alleges in its complaint that a "transfer of assets" from Yoss LLP to Wong Fleming took place and that Wong Fleming's disassociation from Yoss LLP "had the effect of transferring assets" out of NEI's reach, it provides no support for these conclusory assertions and fails to address this deficiency in its opposition.  Compl. ¶¶ 26, 39.  Moreover, according to Wong, the exchange of one share or unit as called for in the Affiliation Agreement—the only conceivable transfer of assets that the evidence suggests could have taken place—never actually occurred.  *See* Wong Decl. ¶¶ 16-17.  Accordingly, because NEI has not made the threshold showing of a sale or transfer of assets from Yoss LLP to Wong Fleming, Counts One and Two are subject to dismissal.  *See Ramirez*, 86 N.J. at 340; *Portfolio Fin. Servicing Co.*, 334 F. Supp. 2d at 624-25.

Moreover, even if there had been a transfer of assets, none of the exceptions to the general bar on successor liability are applicable in the present case.  Pursuant to the express terms of the Affiliation Agreement, Wong Fleming and Adorno & Yoss (later Yoss LLP), remained separate in numerous significant respects even prior to Wong Fleming's decision to terminate the Agreement in March 2011.  Specifically, each party was responsible solely for its own debts and taxes, and neither party possessed "the right, power or authority to bind the other party to any debt or other obligation."  Agreement, ¶¶ 10-11.  Significantly, the Agreement further provided that it is "solely an affiliation agreement" and "[u]nder no circumstances shall . . . be deemed to create a general partnership between [Adorno & Yoss] and [Wong & Fleming] . . . is not intended, and shall not be construed to, confer any rights upon any shareholder, *creditor*, partner or joint venturer of [Wong & Fleming] or [Adorno & Yoss] . . . and . . . is not intended to

7

create, and shall not create, a joint venture, nor shall the parties hereto be partners or joint venturers." *Id.* ¶ 21. NEI has not alleged or set forth evidence that these separate obligations and identities changed when Wong Fleming broke away from Yoss LLP in March 2011, and has not identified any genuine dispute of material fact as to whether a merged or consolidated entity arose or that Wong Fleming was merely the continuation of Yoss LLP.[4] *See, e.g.*, *Ramirez*, 86 N.J. at 340-41. Additionally, as discussed in more detail below, there is no indication that Wong Fleming acted fraudulently in order to escape responsibility for the satisfaction of the Yoss Judgment or was even aware that that judgment was going to be or had been entered. *See infra;* Wong Decl. ¶ 15. Accordingly, none of the exceptions to the general bar on successor liability are applicable on the facts of this case. *See Ramirez*, 68 N.J. at 340-41.

Finally, NEI's argument that the related doctrines of collateral estoppel and res judicata bar Wong Fleming from arguing that it was a separate entity from Yoss LLP at the time of the state court judgment are without merit. The doctrine of collateral estoppel bars subsequent re-litigation of an issue only when: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 352 (2007). Res judicata, on the other hand, serves to bar a

---

[4] NEI does not clearly invoke any of the exceptions to successor liability, but appears to assert that a de facto merger or mere consolidation took place. It does not, however, provide legal or factual authority to support that assertion, and its allegations that Wong Fleming's press release and Wong's testimony as to the relationship between the firms are insufficient to create a genuine dispute of material fact. Additionally, according to Linda Wong's Declaration, Yoss LLP and Wong Fleming were significantly different in size and location, had separate management, were always responsible for their own profits, taxes, and debts, and none of the equity partners at Adorno & Yoss or Yoss LLP ever joined Wong Fleming. Wong Decl. ¶¶ 10-11, 20-21. *See Portfolio Fin. Servicing Co.*, 334 F. Supp. 3d at 625-26 (setting forth considerations in determining whether a de facto merger or mere continuation has been established); *United States v. Chubb Institute*, 2010 WL 1076228, at *15-16 (D.N.J. Mar. 22, 2010).

claim only when: (1) the judgment in the prior action was valid, final, and on the merits; (2) the parties in the later action are identical to or in privity with those in the prior action; and (3) the claim in the later action grows out of the same transaction or occurrence as the claim in the earlier action. *Watkins v. Resorts Int'l Hotel and Casino, Inc.,* 124 N.J. 398, 412 (1991).

Here, NEI has fallen far short of establishing that either doctrine applies. Relevant to both doctrines, Wong Fleming did not participate in the prior action and is neither identical to nor in privity with the parties that did.[5] *Id.*; *First Union Nat'l Bank*, 190 N.J. at 352 Additionally, the issue that was decided in the prior action is not identical to any of the issues present in the instant dispute: Judge Hurd's findings as to the relationship between Yoss Wong and Fleming and Yoss & Adorno were explicitly based upon the "low threshold for personal jurisdiction." Saldutti Decl., Ex. C at 17; *First Union Nat'l Bank*, 190 N.J. at 352. Accordingly, neither collateral estoppel nor res judicata apply in this case, and Wong Fleming is entitled to summary judgment on Counts One and Two.

> B.  Counts Three and Four: Legal and Equitable Fraud and Negligent Misrepresentation

NEI next asserts a claim for legal and equitable fraud in Count Three of its complaint. As the basis for its claim, it identifies a letter dated January 31, 2011, from Yoss LLP's counsel that allegedly misrepresented that the firm would be putting money in escrow pending the filing of an appeal and motion for reconsideration in the underlying state court action before Judge Hurd.

---

[5] Neither Wong Fleming, Adorno Yoss Wong & Fleming, Yoss Wong Fleming, nor Yoss Holdings, LLP were named as parties in the prior suit, and Wong Fleming never appeared or participated in the action. *See* Wong Decl.¶¶ 7; Yoss Aff. ¶¶ 5-11. Wong further stated that NEI was informed that Wong Fleming would not accept any demands in connection with that action in light of the separate nature of Wong Fleming and Adorno & Yoss and because Wurtenberger was not part of the payroll at Wong Fleming's Princeton office, and that Adorno & Yoss's (later Yoss LLP) Coral Gables, Florida office handled all of the litigation in state court. Wong Decl. ¶¶ 4-6. Additionally, Yoss stated in his affidavit that Wurtenberger was never employed by or a partner at Yoss LLP-NJ or Yoss Wong Fleming-NJ, and that Yoss Wong Fleming-NJ, an entirely separate entity, "ha[d] no interest or stake" in the state court action. Yoss Aff. ¶¶ 5-7.

Count Four includes a claim for negligent misrepresentation grounded in the same alleged conduct.

To assert a claim for fraud under New Jersey law, a plaintiff must establish: (1) a material misrepresentation by the defendant of a presently existing fact or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely on the statement; (4) reasonable reliance by the plaintiff; and (4) resulting damages. *Marino v. Marino,* 200 N.J. 315, 341 (2009). If only equitable remedies are sought, the plaintiff "need meet only the lesser burden of proving equitable fraud[ and, c]onsequently, scienter is not at issue." *Id.* (internal citation omitted). Similarly, to establish a claim for negligent misrepresentation, a plaintiff must show "that the defendant negligently made an incorrect statement of a past or existing fact, that the plaintiff justifiably relied on that statement, and that his reliance caused a loss or injury." *Masone v. Levine,* 382 N.J. Super. 181, 187 (App. Div. 2005) (citing *Kaufman v. i-Stat Corp.,* 165 N.J. 94, 109 (2000)).

Here, Defendants are entitled to summary judgment on NEI's fraud and negligent misrepresentation claims because NEI bases those claims entirely on allegedly fraudulent statements made by James Stahl, counsel for Yoss LLP, to NEI's counsel. Indeed, none of Defendants are alleged to have made or been responsible for those statements, and NEI has provided no evidence that Defendants participated in or had knowledge of any of the alleged misrepresentations.[6] *See Marino*, 200 N.J. at 341; *Masone*, 382 N.J. Super. at 187. Moreover, although NEI asserts that issues of fact exist in light of Wong's "equivocal" testimony as to her relationship and dealings with Stahl, Wong clearly testified that she does not even know who Stahl is and did not recall having any conversations with him, far less conversations relating to

---

[6] The Court notes that NEI provides no support for its assertion that Wong Fleming may have later "join[ed] in promoting" Yoss LLP's alleged fraudulent scheme. Pl.'s Opp. Br. at 11.

10

the alleged misrepresentations. Wong Dep. 38:21-25. Similarly, she stated that Wong Fleming was neither a party to nor participated in the underlying litigation before Judge Hurd. Wong Decl. ¶¶ 4-7; *see also* Yoss Aff. ¶¶ 5-11. Accordingly, Defendants are entitled to summary judgment on Counts Three and Four of NEI's complaint.

  C. <u>Count Five: Fraudulent Concealment</u>

NEI asserts a claim for fraudulent concealment in Count Five of its complaint. It alleges that Yoss LLP's counsel had a duty to disclose that Wong Fleming would be disassociating from the firm imminently and that, as a result, Yoss LLP would become insolvent and unable to pay the judgment against Wurtenberger. However, similar to its claims of fraud and negligent misrepresentation addressed above, NEI fails to identify any alleged misconduct on the part of Defendants. Accordingly, because its allegations relate solely to Yoss LLP's counsel, and because NEI does not address this deficiency in its opposition or otherwise set forth evidence creating any issue of fact as to its fraudulent concealment claim, Wong Fleming is entitled to summary judgment on Count Five. *See, e.g.*, *New Jersey Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 319 N.J. Super. 435, 446 (App. Div. 1998).

  D. <u>Count Six: Fraudulent Transfer</u>

In Count Six, NEI asserts a claim under the Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20, *et seq.* ("UFTA"). In support of its claim, NEI alleges that Wong Fleming's "breaking away" from Yoss LLP "had the effect of transferring assets out of the reach of [NEI]," and that the timing of the "transfer" and Wong's failure to produce the Affiliation Agreement provide evidence of an intent to defraud. Compl. ¶¶ 39-41.

Under UFTA, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation

11

was incurred, if the debtor made the transfer or incurred the obligation: a. With actual intent to hinder, delay, or defraud any creditor of the debtor." N.J.S.A. 25:2–25. The plaintiff bears the burden of proving that the transfer was fraudulent by clear and convincing evidence, and courts consider various factors, or "badges of fraud," in determining fraudulent intent. *Jecker v. Hidden Valley, Inc.*, 422 N.J. Super. 155, 164 (App. Div. 2011). Those factors include, *inter alia*, whether the transfer was to an insider, whether the transfer was of substantially all of the debtor's assets, whether the debtor absconded, and whether the transfer occurred shortly before or shortly after a substantial debt was incurred. *See* N.J.S.A. 25:2-26.

Here, as a threshold matter, Defendants are entitled to summary judgment on NEI's fraudulent transfer claim because, as discussed above, NEI has not identified or set forth evidence of any transfer that ever took place between Yoss LLP and Wong Fleming.[7] *See* N.J.S.A. 25-2-21, 22 (defining "transfer" as a "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset"). Additionally, NEI does not provide any evidentiary support for its assertion that issues of fact exist as to the "badges of fraud," *see Jecker*, 422 N.J. Super. at 164, and its attempt to equate the timing of Wong Fleming's disassociation from Yoss LLP with fraudulent intent does not save its claim, particularly without any showing that a transfer took place and in light of the testimony that Wong Fleming was unaware of the impending judgment against Yoss LLP and instead decided to terminate the Agreement pursuant to its terms upon concluding that the firm could no

---

[7] NEI provides no support for its conclusory assertion that Wong Fleming's termination of the Affiliation Agreement had the "effect of transferring assets" out of NEI's reach. Moreover, as discussed *supra* III(A), the Affiliation Agreement makes the separate identities and obligations of the firms clear insofar as it provides, *inter alia*, that Wong Fleming and Yoss LLP remained responsible solely for their own debts and liabilities, could not bind each other to any debt or obligation, and did not intend to confer any rights upon each other's creditors. Likewise, the token exchange called for in the Agreement never actually took place, *see* Wong Decl. ¶¶ 16-17, and even if it had, NEI provides no indication that it was anything other than "in good faith and for a reasonably equivalent value." *See* N.J.S.A. 25:2-30.

longer be considered minority-owned.  *See* Wong Decl. ¶¶ 11-14.  Accordingly, Defendants are entitled to summary judgment on Count Six.

      E.      <u>Count Seven: Piercing the Corporate Veil</u>

In Count Seven, NEI asserts that the Court should pierce the corporate veil and hold Defendants Linda Wong and Daniel Fleming personally liable on the basis of their alleged abuse of the corporate structure of Adorno Yoss Wong & Fleming.  NEI alleges that Defendants separated the solvent portion of the firm into Wong Fleming in March 2011, approximately the same time that the Yoss Judgment was entered in state court.

In the absence of extraordinary circumstances such as fraud or injustice, a court will not generally pierce the corporate veil.  *Lyon v. Barrett*, 89 N.J. 294, 300 (1982).  In New Jersey, two elements must be demonstrated to justify piercing the corporate veil: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."  *State Capital Title & Abstract Co. v. Pappas Business Serv., LLC*, 646 F. Supp. 2d 668,679 (D.N.J. 2009)(internal citations omitted).  Various factors may be considered in making these determinations, including, *inter alia*, the failure to observe corporate formalities, gross undercapitalization, and the absence of corporate records.  *Id.*

Here, because NEI does not allege or provide evidence of any of the factors or elements required to pierce to the corporate veil, Defendants are entitled to summary judgment on Count Seven.  In support of its claim, NEI merely asserts that Defendants Fleming and Wong abused the corporate structure by "transfer[ring] . . . assets" and "separating the solvent portion" of Adorno Yoss Wong & Fleming into Wong Fleming at approximately the same time as the Yoss

13

Judgment was entered. Pl.'s Opp. Br. at 10; Compl. ¶ 43. However, as discussed above, NEI provides no evidence that any transfer ever took place or that anyone at Wong Fleming was even aware of the impending judgment against Yoss LLP. Likewise, NEI fails to identify any alleged fraudulent conduct attributable to Defendants and does not otherwise establish circumstances sufficient to warrant piercing the corporate veil. *See State Capital Title & Abstract Co.*, 646 F. Supp. 3d at 679; *Lyon*, 89 N.J. at 300. Therefore, Defendants are entitled to summary judgment on Count Seven.

### IV.   CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted. An appropriate Order follows.

/s/ JOEL A. PISANO
United States District Judge

Dated: March 30, 2012